# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 33173

| | |
|---|---|
| JENNIFER L. COX, | ) |
| | ) Boise, March 2007 Term |
| Claimant-Appellant, | ) |
| | ) 2007 Opinion No. 45 |
| v. | ) |
| | ) Filed: March 28, 2007 |
| THE HOLLOW LEG PUB AND BREWERY | ) |
| and NEXTEL PARTNERS OPERATING | ) Stephen W. Kenyon, Clerk |
| CORP., | ) |
| | ) |
| Employers-Respondents, | ) |
| | ) |
| and | ) |
| | ) |
| IDAHO DEPARTMENT OF COMMERCE | ) |
| AND LABOR, | ) |
| | ) |
| Respondent. | ) |

Appeal from the Industrial Commission of the State of Idaho.

The order of the Industrial Commission is affirmed.

Mimura, James & Mimura PLLC, Meridian, for appellant. Mark J. Mimura argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Evelyn Thomas, Deputy Attorney General, argued.

---

EISMANN, Justice.

This is an appeal from a decision and order determining that a recipient of unemployment benefits had willfully underreported her weekly income for eighteen of the twenty-one weeks she was receiving benefits. As a result, she was ruled ineligible for benefits for those eighteen weeks and for fifty-two weeks following that determination. We affirm the decision of the Industrial Commission.

# I. FACTS AND PROCEDURAL HISTORY

Jennifer Cox (Cox) was employed as a server by the Hollow Leg Pub and Brewery (Pub) during the period from March 15, 2004, until July 2, 2005. She made $3.35 per hour plus tips. During that period she also received unemployment benefits of $325.00 per week. Cox was required to report her weekly earnings to the Department of Commerce and Labor (Department).

The Pub kept track of the hours Cox worked by an automated system that she clocked into and out of each shift. At the end of her shift, she also entered into that system the amount she had received in tips during her shift. That amount was to include both cash and credit card tips, and it was Cox's obligation to determine the amount of her tips each day.

After comparing the weekly earnings Cox reported to the Department with her earnings as reported by the Pub, a Department claims investigator determined that Cox was underreporting her earnings. On October 25, 2005, the investigator sent Cox a letter stating that her reported earnings differed from those reported by the Pub and asking Cox to explain the discrepancy. In the letter, the investigator listed the earnings reported by Cox and the earnings reported by the Pub for each of the eighteen weeks at issue. Cox did not respond to that letter. She later testified that she did not receive it.

On November 16, 2005, the claims investigator sent Cox another letter stating that Cox owed $5,850.00 in overpayments and a penalty of $1,462.50. Cox then appealed that determination. The appeal was heard by telephone before an appeals examiner, with Cox, the Pub's business manager, and the Department's claims investigator appearing. On January 9, 2006, the appeals examiner issued her decision, finding: (1) that Cox had willfully underreported her wages for the eighteen weeks; (2) that she was ineligible for benefits for those weeks; (3) that the benefits Cox received for the weeks she was ineligible constituted overpayments; (4) that Cox was required to repay the overpayments because she did not meet the statutory requirements for waiving them; and (5) that Cox was ineligible for benefits for fifty-two weeks.

Cox retained an attorney, and on January 23, 2006, appealed the decision of the appeals examiner. The Industrial Commission conducted a *de novo* review of the record, and on February 23, 2006, it affirmed the decision.

On March 15, 2006, Cox filed motions asking for reconsideration of the Commission's decision and requesting a new hearing. On May 2, 2006, the Industrial Commission denied both motions on the ground that there was no showing of any meritorious reason to grant them.

On May 22, 2006, Cox again filed motions for reconsideration and a new hearing. These motions were identical to the ones filed on March 15, 2006. On June 1, 2006, the Industrial Commission dismissed these motions on the ground that there was no statutory authority allowing a second reconsideration after denial of the initial request and that the order entered on May 2, 2006, was the final order in this proceeding. On June 13, 2006, Cox filed a notice of appeal to this Court.

## II. ISSUES ON APPEAL

1. Is the decision of the Industrial Commission supported by substantial and competent evidence?

2. Was Cox denied due process of law?

## III. ANALYSIS

### A. Is the Decision of the Industrial Commission Supported by Substantial and Competent Evidence?

"When considering an appeal from the Industrial Commission, this Court is limited to reviewing questions of law. Idaho Const. Art. V, § 9. The Commission's findings of fact will not be disturbed on appeal where they are supported by substantial and competent evidence. I.C. § 72-732." *Pimley v. Best Values, Inc.*, 132 Idaho 432, 434, 974 P.2d 78, 80 (1999). "Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion. The Court will not re-weigh the evidence or consider whether it would have reached a different conclusion from the evidence presented." *Edwards v. Independence Services, Inc.*, 140 Idaho 912, 914, 104 P.3d 954, 956 (2004).

Idaho Code § 72-1366 provides, "A claimant shall not be entitled to [unemployment] benefits for a period of fifty-two (52) weeks if it is determined that he has willfully made a false statement or willfully failed to report a material fact in order to obtain benefits." "[A] fact is material if it is relevant to the determination of a claimant's right to benefits; it need not actually affect the outcome of that determination." *Meyer v. Skyline Mobile Homes*, 99 Idaho 754, 760,

3

589 P.2d 89, 95 (1979). The term "willfully" refers to those claimants who "purposely, intentionally, consciously, or knowingly fail to report a material fact [or make a false statement], not those whose omission [or false statement] is accidental because of negligence, misunderstanding or other cause." *Id*. at 761, 589 P.2d at 96.

The Industrial Commission found as follows:

In her Decision, the Appeals Examiner noted the discrepancy between what Claimant reported and what Employer reported was not simply a minor portion of her earnings. Claimant reported $1,849.96 less than the $3,200.96 her Employer reported. Each week, Claimant reported less than half her weekly benefit amount of $325.00. The Handbook Claimant acknowledged reading told her, "You can earn up to one-half your weekly benefit amount and still receive the full weekly benefit amount for that week." (Handbook, p. 15)

Finally, each time Claimant called to report, the process began with the following message:

*By using this system you agree to have your answers become part of your claim record. You are certifying that your answers are true and accurate to the best of your knowledge. Under Idaho Law, you could be penalized for giving false answers* [or] *for withholding information.*

(Unemployment Insurance Handbook, p. 10 (emphasis original). Although she was reminded each time that her answers had to be accurate and truthful, she opted not to take any steps to insure her answers were accurate.

Under the circumstances, we find Claimant knew or should have known she needed to insure she reported her earnings accurately, but nevertheless deliberately chose not to do so. A finding that a claimant knew what information IDCL solicited, but nevertheless deliberately chose to respond without pursuing clarification ordinarily supports a conclusion of willful falsehood or concealment. Meyer, 99 Idaho at 762, 589 P.2d at 97. As a result, we find Claimant willfully chose to conceal the true extent of her earnings during the period at issue.

Cox contends that the Commission's findings are not supported by substantial and competent evidence in several respects. First, she argues that she denied wrongdoing and there was no testimony controverting her denial. She contends that there must be expert testimony establishing that Cox's false reporting of her wages was willful. A claimant's mental state need not be established by expert testimony; it can be inferred from the claimant's conduct and from the circumstances. *Doe I v. Doe*, 138 Idaho 893, 900, 71 P.3d 1046, 1047 (2003) ("willful intent is provable by circumstantial evidence"). Cox underreported her wages for eighteen of the twenty-one weeks she was receiving benefits. The Commission could infer from the facts in the case that her underreporting was willful and not accidental. It was not required to accept her

4

assertion that she tried to keep track of her income in her head and reported it to the best of her knowledge. It was an issue of credibility. "The factfinder may consider the claimant's explanation unworthy of belief." *Meyer v. Skyline Mobile Homes*, 99 Idaho 754, 762, 589 P.2d 89, 97 (1979).

Next, Cox contends that the Pub's business manager "was never asked, and never testified, that the wages reported for the Claimant in Exhibit 6 were accurate." Exhibit 6 was a form listing Cox's wages and tips for each of the weeks at issue. The business manager testified that she filled out Exhibit 6 and that she obtained the information from two sources. One source was the time cards prepared by the Pub's automated system that recorded when Cox checked in and out each work day. The other source was the entries in that automated system made by Cox at the end of each shift stating the amount she had received in tips. The Pub's general manager could alter the hours worked if, for example, an employee failed to clock in or clock out. The general manager could not alter the amount the employee entered in tips. The business manager signed Exhibit 6, and just above her signature was the statement, "The information provided by me is true and accurate to the best of my knowledge." Cox was provided with a copy of Exhibit 6 prior to the hearing, and she did not object to it being admitted into evidence. She also did not ask any questions of the Pub's office manager. The Commission's finding as to the wages and tips Cox received during the weeks at issue is supported by substantial and competent evidence.

Finally, Cox argues facts that she contends show that she did not act willfully in underreporting her income. She points out that during the first week she reported more income than she received and that during eight of the weeks she would still have been entitled to benefits had she reported her income accurately. "The Court will not re-weigh the evidence or consider whether it would have reached a different conclusion from the evidence presented." *Edwards v. Independence Services, Inc.*, 140 Idaho 912, 914, 104 P.3d 954, 956 (2004). The Commission's finding that Cox willfully underreported her income is supported by substantial and competent evidence.

## B. Was Cox Denied Due Process of Law?

Cox contends that several irregularities deprived her of due process because she did not have the opportunity to be heard at a meaningful time and in a meaningful manner. First, she argues that prior to the hearing she was not advised of how her employer had calculated her

wages and tips. Prior to the hearing, Cox was provided with copies of all of the exhibits admitted during the hearing, including Exhibit 6 which showed her employer's calculations. At the beginning of the hearing, she stated she had no objection to them being admitted into evidence. She testified that the employer's figures seemed a little high to her, but she admitted that she did not keep any written records of her wages and tips. She simply tried to keep a running total in her head. Cox was paid every other week, and the Pub's business manager testified that the Pub's pay period did not correspond to the weekly reporting periods required by the Department. As a result, the amounts shown on Cox's paychecks would not coincide with the weekly wages and tips that the Pub reported to the Department. Cox did not testify that she used her paychecks to make her weekly reports to the Department, and she could not have done so. She had to report weekly but she was paid every other week. In addition, the eighteen weeks that she underreported her income included twelve consecutive weeks. The difference between her reporting period and her pay period would not explain twelve consecutive weeks of underreporting. Nevertheless, Cox did not request more time to prepare for the hearing.

Cox asserts that she may not have been adequately advised of the issues to be determined by the appeals examiner. She argues on appeal that the documents served upon her could be read as charging her with "fraud," rather than the lesser "willful" standard. The written notice of hearing stated:

> This hearing is to determine (1) whether the claimant willfully made a false statement or representation or willfully failed to report a material fact in order to obtain unemployment insurance benefits, according to § 72-1366(12) of the Idaho Employment Security Law; and (2) whether the claimant has received benefits to which s/he was not entitled, and if so, whether the requirement to repay benefits owed to the Employment Security Fund may be waived, according to § 72-1369(5) of the Idaho Employment Security Law.

The only mention of fraud was in another document she was sent entitled "Important Information About Your Hearing, Read Carefully." The last paragraph of that two-page document had a paragraph entitled "Fraud," which advised that there was a criminal statute making misrepresentation to obtain benefits a felony. There is nothing in the record indicating that Cox believed she was charged with that felony, or that she was charged with fraud. There is nothing in the record showing that she was in any way confused or inadequately advised by the notice of hearing.

6

Cox also claims that she was not given adequate opportunity to present testimony and evidence on her behalf. Prior to the hearing, she was provided with copies of the exhibits that were offered. She stated that she had received them and had no objection to any of them. Cox did not offer any exhibits of her own at the hearing. The appeals examiner questioned Cox first, and neither the claims investigator nor the Pub's business manager had any questions. The appeals examiner then questioned the Pub's business manager. When she was done, both the claims investigator and Cox declined to ask any questions. The claims investigator was the last witness. After the appeals examiner had questioned her, Cox declined to ask any questions. Then the appeals examiner asked, "Jennifer Cox, would you like to make a final statement for the record?" Cox did so, reiterating that she had reported her earnings to the best of her ability. There is nothing in the record indicating that Cox had additional information that she wanted to present.

Assuming that any of the above constitutes irregularities, Cox did not raise the issue below. "This Court generally will not consider constitutional issues that have been raised for the first time on appeal." *Buffington v. Potlatch Corp.*, 125 Idaho 837, 840, 875 P.2d 934, 937 (1994). Therefore, we will not address whether any of the above alleged irregularities could constitute the denial of due process had it been raised and proven.

Finally, Cox alleges she was denied due process of law during the appeal from the claims examiner to the Industrial Commission. Cox filed her notice of appeal on January 23, 2006, alleging four issues: (1) The employer did not properly calculate and report Cox's wages; (2) Cox did not willfully make a false statement or fail to report a material fact; (3) the amount of the alleged discrepancy was not sufficient to show willful action; and (4) the appeals examiner erred in affirming the eligibility determination and denying Cox a waiver of the penalty. Cox did not submit anything in support of the appeal. Her attorney was apparently waiting for a written transcript of the hearing, not realizing that only an audio tape of the hearing would be used for the appeal. The record indicates that a copy of the audio tape was mailed to Cox's counsel on January 26, 2006.

Idaho Code § 72-1368(7) provides, "The record before the commission shall consist of the record of proceedings before the appeals examiner, unless it appears to the commission that the interests of justice require that the interested parties be permitted to present additional evidence." Neither party requested a hearing before the Industrial Commission to present

7

additional evidence, and based upon the record the Commission found that the interests of justice did not require a new hearing. On February 23, 2006, the Industrial Commission issued its decision and order on appeal based upon its *de novo* review of the record.

On March 14, 2006, Cox's counsel filed a motion for reconsideration and a request for a hearing on the merits of the appeal. In support of the motion, Cox's counsel simply re-alleged the four issues stated in the notice of appeal. In the cover letter, Cox's counsel stated that he had not received transcripts of the hearing as required by Rule 3(F) of the Rules of Appellate Practice and Procedure. That Rule does not require a transcript of the hearing. It requires the Commission to prepare and serve upon the parties "a copy of the tape recording of the appeals examiner's hearing" and provides that "[t]he form of the copy, either audio tape or paper transcript, will be at the discretion of the Commission." By order entered May 2, 2006, the Commission denied the motion for reconsideration and the motion for a new hearing. It held that the four conclusory statements were not sufficient to merit either a reconsideration or a new hearing.

On May 22, 2006, Cox's counsel filed a second motion for reconsideration and a request for a new hearing. It restated as grounds the four issues stated in the notice of appeal and first motion for reconsideration. The Commission dismissed it on June 1, 2006, on the ground that its rules did not provide for a second reconsideration and the decision of May 2, 2006, remains the final order in the case.

Cox asserts on appeal that the short time frames mandated by federal law for these appeals should require the Commission "to provide a 'paper transcript' of the Appeals Examiner's Hearing and serve notice on 'all interested parties' by way of 'Notice of Service of Transcript of Hearing.'" Cox does not present any argument or authority to support that assertion. "We will not consider issues cited on appeal that are not supported by propositions of law, authority, or argument." *Callaghan v. Callaghan*, 142 Idaho 185, 190, 125 P.3d 1061, 1066 (2005).

Cox's counsel also indirectly asserts that he did not receive a copy of the audio tape of the hearing before the appeals examiner. He does not state that he did not receive the audio tape. Rather, he relies upon a statement by opposing counsel in a letter she wrote on May 25, 2006, to the Industrial Commission stating that she had no objection to the matter being reconsidered on the merits. In that letter, she stated that several weeks earlier Cox's counsel had called and said

he had not yet received the transcript of the hearing. She then looked in her file and told him she had an audio tape of the hearing and it did not appear that a transcript was being prepared. She described his response as follows:

> He indicated he had not received the tape. He said he was not aware he was supposed to have received a tape until I pointed out the language of the certificate of service dated January 26, 2006, which indicated that a copy of the notice of appeal and tape had been mailed to him.

Cox did not raise the alleged failure to receive a copy of the audio tape before the Industrial Commission in either of her motions for reconsideration.

Assuming that Cox did not receive a copy of the audio tape, she has not shown any prejudice. Prior to the Commission issuing its decision, Cox did not request a new hearing to present additional evidence. When she did make that request along with her motion for reconsideration of the Commission's decision, she did not present or allege anything that would justify a new hearing. There is no indication she had additional evidence to present. After asking the Commission to reconsider its decision, she merely added, "Claimant Requests a Hearing on the Motion for Reconsideration and on the Merits of the Appeal." Her motion did not even allege that the interests of justice required a new hearing. She does not argue on appeal that the Commission erred in failing to grant her request for a new hearing. Thus, this appeal is from the Commission's decision based upon its *de novo* review of the record. For the purposes of this appeal, Cox has a written transcript of the hearing testimony. She has not shown how her alleged lack of an audio tape of the hearing in any way impacts this appeal.

## IV. CONCLUSION

We affirm the decision of the Industrial Commission. We award costs on appeal to the respondents.

Chief Justice SCHROEDER, and Justices TROUT, BURDICK and JONES **CONCUR**.

9